**PEOPLE FOR THE AMERICAN WAY FOUNDATION, Plaintiff,**

v.

**NATIONAL SECURITY AGENCY/CENTRAL SECURITY SERVICE, Defendant.**

**Civil Action No. 06–206 (ESH).**

United States District Court, District of Columbia.

Nov. 20, 2006.

Elliot M. Mincberg, People for the American Way Foundation, Michael L. Martinez, Crowell & Moring LLP, Washington, DC, for Plaintiff.

Rupa Bhattacharyya, U.S. Department of Justice, Civil Division, Washington, DC, for Defendant.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiff People for the American Way Foundation has sued the National Security Agency ("NSA") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking documents relating to the NSA's recently revealed Terrorist Surveillance Program ("TSP"). The issue before the Court is whether the NSA properly invoked various statutory exemptions under FOIA to withhold documents responsive to plaintiff's requests, and to refuse to confirm or deny the existence of other respon-

sive documents. Plaintiff has withdrawn a number of its original requests, and defendant has moved for summary judgment with respect to all of plaintiff's remaining FOIA requests. Plaintiff has also moved for summary judgment with respect to three of its requests, and has opposed defendant's motion for summary judgment on the other two remaining requests. As explained herein, the Court grants defendant's motion for summary judgment and denies plaintiff's motion.

## BACKGROUND

The NSA is a separate agency within the Department of Defense charged with collecting, processing and disseminating signals intelligence ("SIGINT") information for foreign intelligence purposes, along with other objectives relating to national security. (Def.'s Facts ¶¶ 1, 2.) In the aftermath of September 11, 2001, President Bush authorized the NSA to intercept the international communications to and from the United States of people linked to al Qaeda or related terrorist organizations. (Def. Mot. at 5.) This surveillance was conducted without obtaining a warrant from the Foreign Intelligence Surveillance Court. (Pl. Mot. at 2.) The existence of this previously secret program—known as the TSP—was first acknowledged by President Bush on December 17, 2005. (Def.'s Facts ¶ 17.) Senate testimony by General Michael Hayden, current director of the Central Intelligence Agency and former director of the NSA, and similar statements from other government officials, indicate that lawyers from the United States Department of Justice and the White House Counsel's office have been involved in analyzing the legality of the TSP. (Pl. Mot. at 21; Def. Reply at 14.)

On December 29, 2005, plaintiff, a non-profit public interest organization whose stated mission is to educate the general public regarding current issues of civil and constitutional rights (Compl. ¶ 4), submitted a FOIA request to the NSA seeking records relating to the TSP. (Def.'s Facts ¶ 22.) Plaintiff then filed this action on February 6, 2006, to compel release of the requested records. (Compl. ¶ 1.) Plaintiff's original FOIA request sought sixteen categories of documents, but plaintiff has since withdrawn eleven of these specific requests.[1] (Pl. Mot. at 1.) Five of the original document requests remain at issue here. Specifically, plaintiff seeks:

No. 2: Any and all documents that refer, reflect or relate to the total number of individuals that have been the subject of electronic surveillance by the NSA in the United States without a court approved warrant pursuant to [President Bush's Executive] Order since the date of the Order up to the date of this request.

No. 3: Any and all documents that refer, reflect or relate to the total number of individuals who have been the subject of warrantless electronic surveillance by the NSA in the United States since the mid-2004 Department of Justice audit of the NSA's warrantless domestic electronic surveillance program up to the date of this request.

No. 4: Any and all documents that refer, reflect or relate to the total number of wiretaps or other instances of electronic surveillance conducted by the NSA pursuant to authority granted the NSA by the Order regardless of whether such number includes succes-

---

1. On February 14, 2006, defendant produced 106 pages of documents responsive to one of plaintiff's withdrawn requests, and explained that it had no documents responsive to several other of the withdrawn requests. (Def.'s Facts ¶ 24.)

sive wiretaps conducted on the same individual.

No. 6: Any and all documents relating to any audit or review of the NSA's program to conduct domestic warrantless electronic surveillance on individuals within the United States ... pursuant to the Order since its execution, whether such audit or review was conducted internally by the NSA or externally, and whether such review or audit was conducted for the benefit of congressional or executive branch use.

No. 16: Any and all NSA records relating to People For the American Way Foundation or People for the American Way.

(Pl.Ex. 1 [Dec. 29, 2005 FOIA Request] at 1–3.) As an alternative to its requests 2–4, plaintiff states that it would "accept a full list of the domestic wiretaps or other electronic surveillance conducted by the NSA and the number of persons subject to that surveillance within the requested time frame under the authority granted by the Order, with the names of the targeted individuals and organizations redacted." (*Id.* at 3.)

Citing FOIA Exemptions 1, 3 and 5, defendant has withheld documents responsive to requests 2–4 and 6, and has refused to confirm or deny the existence of documents responsive to request 16. (Def.'s Facts ¶ 24; Def Mot. at 10, 17, 34.) Defendant has filed the declarations of two NSA officials explaining the agency's reasons for the withholdings. (*See* Declaration of Louis F. Giles; Declaration of Joseph B.; Supplemental Declaration of Louis F. Giles.) According to these declarations, documents responsive to requests 2–4 and 6 relate to the sensitive activities and functions of the NSA, and their disclosure could reasonably be expected to cause grave damage to national security. (Joseph B. Decl. ¶¶ 9, 10, 14, 18, 19.) This information, defendant argues, is exempt from disclosure because it is protected by several federal statutes, and also because it has been properly classified "TOP SECRET–SCI" [2] pursuant to executive order. (*See id.* ¶¶ 14, 15, 19.) The declarations also explain that the NSA cannot, in the interest of national security, confirm or deny the existence of records responsive to request 16, because confirmation or denial of the NSA's surveillance of any particular target "would allow our adversaries to accumulate information and draw conclusions about NSA's technical capabilities and methods." (*Id.* ¶ 27.) Thus, defendant claims, the fact of the existence or nonexistence of documents responsive to request 16 is also properly classified and protected from disclosure by federal statute, and therefore is exempt from disclosure under FOIA. (*Id.* ¶¶ 28–29.) Based on these declarations, defendant has moved for summary judgment on all of plaintiff's outstanding requests.

Plaintiff has likewise moved for summary judgment on its requests 2–4, and opposes defendant's motion for summary judgment with respect to requests 6 and 16. (Pl. Mot. at 1.) In support of its motion, plaintiff argues that defendant's declarations are insufficient to support defendant's withholdings under FOIA. (*See id.* at 5.) Specifically, with respect to requests 2–4, plaintiff contends that the disclosure of "bare statistics" regarding the

---

**2.** Information is classified as "Sensitive Compartment Information" ("SCI") when it "involves or derives from particularly sensitive intelligence sources and methods." (Joseph B. Decl. ¶ 4.) Access to such information "requires clearance beyond the 'Top Secret' level" and is "required to be handled exclusively within formal access control systems established by the Director of [National] Intelligence." *Guillot v. Garrett,* 970 F.2d 1320, 1322 n. 1 (4th Cir.1992).

total number of individuals and communications subject to NSA surveillance could not reasonably be expected to result in damage to the national security, and that it would not reveal anything about the NSA's sources, methods, or procedures, nor expose any function of the NSA that is not already known to the public. (*Id.* at 6, 11, 14–17.) Similarly, plaintiff argues that confirming or denying the existence of records responsive to request 16—information relating solely to any surveillance of plaintiff's own communications under the TSP—would not cause harm cognizable under any FOIA exemption, as it relates to only one of "hundreds of millions" of potential surveillance targets and would not reveal anything about the millions of other potential targets. (*Id.* at 27, 30.) Regarding request 6, plaintiff argues that the request encompasses any "legal opinions" concerning the TSP, and that defendant failed to justify the exemption of such documents in their entirety in reasonably specific detail. (*Id.* at 21.) Finally, citing a recent district court decision from another jurisdiction that held the TSP to be illegal and unconstitutional, plaintiff argues that none of FOIA's exemptions applies to its requests for information about the TSP because "FOIA ... cannot and should not be used as a method of shielding illegal government activity." (Pl. Reply at 4.)

## ANALYSIS

### I. Standard of Review under FOIA

▆ Under FOIA, an agency must disclose all records requested by any person unless the agency can establish that the information falls within one of the nine exemptions set forth in the statute. *See* 5 U.S.C. §§ 552(a)(3)-(b). These exemptions are exclusive, and should be narrowly construed. *Dep't of Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). However, the Supreme Court has noted that the exemptions must be construed "to have a meaningful reach and application." *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 152, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989). An agency that withholds information pursuant to one of these exemptions bears the burden of justifying its decision, and challenges to an agency's decision to withhold information are reviewed *de novo* by the district court. *See* 5 U.S.C. § 552(a)(4)(B); *King v. U.S. Dep't of Justice,* 830 F.2d 210, 217 (D.C.Cir.1987). At the same time, it is "well established that the judiciary owes some measure of deference to the executive in cases implicating national security, a uniquely executive purview." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice,* 331 F.3d 918, 926–27 (D.C.Cir.2003) (citing *Zadvydas v. Davis,* 533 U.S. 678, 696, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (noting that "terrorism or other special circumstances" might warrant "heightened deference to the judgments of the political branches")).

▆ Summary judgment may be granted to the government in a FOIA case if "the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Greenberg v. U.S. Dep't of Treasury,* 10 F.Supp.2d 3, 11 (D.D.C. 1998) (citation omitted). The Court may award summary judgment solely on the information provided in affidavits or declarations when they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981) (citations omitted);

*see also Vaughn v. Rosen,* 484 F.2d 820, 826 n. 20 (D.C.Cir.1973) (citing *EPA v. Mink,* 410 U.S. 73, 93, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973)). Summary judgment is not warranted if the declarations are "conclusory, merely reciting statutory standards, or . . . too vague or sweeping." *King,* 830 F.2d at 219 (internal quotation marks and citation omitted).

Applying these standards, the Court finds that defendant's declarations are sufficiently detailed and specific and that they justify the withholding of the information at issue. The Court therefore upholds defendant's invocation of Exemptions 1 and 3.[3]

## II. Exemption 3

■■■■ Defendant claims that the requested documents are shielded from disclosure under FOIA Exemption 3, which provides for nondisclosure of matters that are "specifically exempted from disclosure by statute. . . ." 5 U.S.C. § 552(b)(3). Exemption 3 applies if the statute in question "(A) requires that matters be withheld from the public in such a manner as to leave no discretion on the issues, and (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." *Id.* In other words, defendant must point to an appropriate nondisclosure statute, and must demonstrate that the withheld materials are covered by that particular statute. *See CIA v. Sims,* 471 U.S. 159, 167, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985). Here, defendant claims exemption from FOIA under three separate statutes: (1) Section 6 of the National Security Agency Act of 1959, Pub.L. No. 86–36, 73 Stat. 63, *codified at* 50 U.S.C. § 402 note; (2) Section 102A(i)(1) of the Intelligence Reform and

Terrorism Prevention Act of 2004, Pub.L. No. 108–458, 118 Stat. 3638, *codified at* 50 U.S.C. § 403–1(i)(1); and (3) 18 U.S.C. § 798. (Def. Mot. at 11–13.) Courts have held, and plaintiff does not dispute, that each of these three statutes qualify under FOIA Exemption 3. *See Larson v. Dep't of State,* No. 02–1937, 2005 WL 3276303, at * 19 (D.D.C. Aug.10, 2005), *appeal docketed* No. 06–5112 (D.C.Cir. Apr. 21, 2006).

■■■■ Section 6 of the NSA Act of 1959 is the broadest of the three statutes cited by defendant. It provides:

[N]othing in this Act or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, [or] of any information with respect to the activities thereof. . . .

50 U.S.C. § 402 note. As the D.C. Circuit has explained, "[t]he protection afforded by section 6 is, by its very terms, absolute. If a document is covered by section 6, NSA is entitled to withhold it. . . ." *Linder v. NSA,* 94 F.3d 693, 698 (D.C.Cir.1996); *see Fitzgibbon v. CIA,* 911 F.2d 755, 761–62 (D.C.Cir.1990) ("Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." (quoting *Ass'n. of Retired R.R. Workers v. U.S. R.R. Ret. Bd.,* 830 F.2d 331, 336 (D.C.Cir.1987)) (internal quotation marks omitted)). However, "[b]arren assertions that an exempting statute has been met cannot suffice to establish that fact. . . ." *Founding Church of Scientology of Wash., D.C., Inc. v. NSA,* 610 F.2d 824, 831 (D.C.Cir.1979).

---

**3.** Because either Exemption 1 or 3 provides a valid basis for granting defendant's motion for summary judgment, the Court need not address defendant's claim under Exemption 5.

The declaration of Joseph B., who oversees the SIGINT operations of the NSA, states that the NSA has a number of documents responsive to plaintiff's requests 2–4, consisting of "briefing slides" that "detail information related to the number of individuals subject to surveillance, contain the identity of some individuals, and contain information related to the number of communications intercepted under the TSP." (Decl. of Joseph B. ¶¶ 1, 9.) The declarant explains that the disclosure of such statistics relating to the operation of the TSP "would reveal information about NSA's success or lack of success in implementing the TSP," as well as "information about the U.S. intelligence community's capabilities, priorities, and activities." (*Id.* ¶ 12.) Accordingly, he contends, information responsive to requests 2–4 relates to "the NSA's activities and functions, and, more broadly, the sources and methods used by the intelligence community." (*Id.* ¶ 15.)

The Joseph B. declaration also acknowledges that the NSA possesses documents responsive to request 6, relating to "any audit or review" of the TSP. (*Id.* ¶ 18.) The declarant states that the responsive documents pertain to "the operation of the program, and provid[e] recommendations and suggestions for the effective operation of the program."[4] (*Id.*) Further, he explains that because all of the material in these documents "is so intertwined with ... information regarding the details of operation of the program"—such as the

dates, scope and effectiveness of the TSP—that "no segregable portion of the responsive documents may be disclosed" under Section 6 and the other cited exemptions statutes. (*Id.* ¶ 20.)

■ Finally, with respect to plaintiff's request 16, which seeks any NSA records related to the surveillance of plaintiff, the NSA declines to confirm or deny the existence of responsive records. (*Id.* ¶ 27.) An agency's refusal to confirm or deny the existence of records is commonly known as a "Glomar response," *see Phillippi v. CIA*, 546 F.2d 1009 (D.C.Cir.1976), and is proper when "to confirm or deny the existence of records ... would cause harm cognizable under an FOIA exception." *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C.Cir.1982). The NSA's declarations explain that "[c]onfirmation by NSA that a person's activities are not of foreign intelligence interest or that NSA is unsuccessful in collecting foreign intelligence information on their activities on a case-by-case basis would allow our adversaries to accumulate information and draw conclusions about NSA's technical capabilities, sources, and methods." (Decl. of Joseph B. ¶ 27.) The declarant further explains that "if NSA were to admit publicly in response to an information request that no information about Persons X, Y or Z exists, but in response to a separate information request about Person T state only that no response could be made, this would give rise to the inference that Person T is a target of the

---

**4.** Plaintiff contends that its request would "logically include" determinations about the legality of the TSP, and that any unclassified material regarding the TSP's legality must be produced. (Pl. Mot. at 19, 20.) Defendant acknowledges that such legal analysis and opinions exist, but maintains that plaintiff's request for "[a]ny and all documents relating to any audit or review" of the TSP, read in the context of its other requests, could not reasonably be interpreted to include *legal* de-

terminations or opinions. (Def. Reply at 13–14.) Defendant interpreted plaintiff's request to involve information regarding "operational reviews" of the program. (*Id.*) The Court agrees that plaintiff's December 29, 2005 letter failed to ask for "documents reflecting outside determinations about the legality of the program," so the Court is unwilling to interpret plaintiff's request to include such legal opinions.

TSP." (*Id.*) This, it follows, would reveal information about the NSA's "organization, functions, and activities." (*Id.* ¶ 29.)

▮▮▮▮ The Court is satisfied that defendant's declarations have described the withheld documents and information in a reasonably specific fashion and have put forth a rational explanation for their withholding under Section 6 and Exemption 3. The NSA has averred that all the requested information concerns a specific NSA activity—intelligence gathering based on "the collection of electronic communications" (Joseph B. Decl. ¶ 5)—and has logically explained that the disclosure of this material would reveal information related to that NSA activity.[5] *See Hayden v. NSA*, 608 F.2d 1381, 1390 (D.C.Cir.1979) (holding that NSA documents obtained through monitoring foreign electromagnetic signals were exempt from FOIA disclosure under Section 6).

In response, plaintiff has failed to rebut defendant's explanations, nor does plaintiff even appear to contest that the information it requests relates to the NSA's SIGINT activities. (*See* Pl. Mot. at 16.) Instead, in the face of the formidable statutory hurdle presented by Section 6, plaintiff essentially asks the Court to evaluate the potential harm that would result from the disclosure of the requested information, contending that "the NSA's own characterization of its activities does not explain how they are so 'fragile' as to pre-clude the disclosure of the total number of individuals and communications subject to the NSA's secret surveillance program." (Pl. Mot. at 16.) As explained above, the law regarding Section 6 does not require the NSA to demonstrate what harm might result from the disclosure of its activities. "A specific showing of potential harm to national security ... is irrelevant to the language of [Section 6]. Congress has already, in enacting the statute, decided that the disclosure of NSA activities is potentially harmful." *Hayden*, 608 F.2d at 1390; *see Linder*, 94 F.3d at 696.

Plaintiff also cites to dicta from the D.C. Circuit's opinion in *Hayden v. NSA*, wherein the Court qualified its expansive interpretation of Section 6 by stating that "where the function or activity is *authorized by statute* and *not otherwise unlawful*, NSA materials integrally related to that function or activity fall within [Section 6] and Exemption 3." *Hayden*, 608 F.2d at 1389 (emphasis added). (Pl. Reply at 2–3.) Pointing to a recent decision from another jurisdiction that held the TSP to be illegal and unconstitutional, *see ACLU v. NSA*, 438 F.Supp.2d 754 (E.D.Mich.2006),[6] plaintiff argues that the TSP is unlawful, and that Exemption 3 cannot prevent the disclosure of information relating to it because FOIA "cannot and should not be used as a method of shielding illegal governmental activity." (Pl. Reply at 4.) Plaintiff also quotes *Terkel v. AT & T*, 441

---

5. In a typical FOIA case, the agency invoking the FOIA exemptions must provide the FOIA requester with a document index, known as a "*Vaughn* index," that itemizes each withheld document and the reasons for its withholding. *See Vaughn*, 484 F.2d at 827–28. In its declarations, the NSA explains that "because of the highly sensitive nature of the information involved" in this case, such an index would itself reveal classified information protected by FOIA Exemptions 1 and 3. (Giles Decl. ¶ 15.) Thus, a *Vaughn* index is not required here, where it "could cause the very harm that section 6 was intended to prevent." *Linder*, 94 F.3d at 697 (holding that no *Vaughn* index was required of SIGINT materials withheld by the NSA).

6. This ruling has been stayed pending appeal to the Sixth Circuit Court of Appeals. *ACLU v. NSA*, Nos. 06–2095, 06–2140, 2006 WL 2827166 (6th Cir. Oct.4, 2006).

F.Supp.2d 899 (N.D.Ill.2006),[7] in which the court expressed concern, without deciding the issue, that

> if, as the court in *Hayden* anticipated, section 6 is taken to its logical conclusion, it would allow the federal government to conceal information regarding blatantly illegal or unconstitutional activities simply by assigning these activities to the NSA or claiming they implicated information about the NSA's functions.

*Id.* at 905.

While the Court agrees that the scope of Section 6 is not without limits, it need not grapple with the problem of defining those limits here, for the well-established operation of Section 6, which forbids disclosure of information relating to the NSA's SIGINT activities, is not implicated by the ongoing debate regarding the legality of the TSP. *See Linder,* 94 F.3d at 696 (holding that "[t]here can be no doubt that the disclosure of SIGINT [material] would reveal information concerning the activities of the agency," and that such disclosure was thus precluded by Section 6) (citing *Hayden,* 608 F.2d at 1389). Whether the TSP, one of the NSA's many SIGINT programs involving the collection of electronic communications, is ultimately determined to be unlawful, its potential illegality cannot be used in this case to evade the "unequivocal[ ]" language of Section 6, which "prohibit[s] the disclosure of information relating the NSA's functions and activities...." *Linder,* 94 F.3d at 696.

The Court therefore holds that defendant's declarations describe the information withheld and "the justifications for nondisclosure with reasonably specific detail" and "demonstrate that the information withheld logically falls within" the statutory exemption of Section 6.[8] *Military Audit Project,* 656 F.2d at 738. Accordingly, as the record contains no contrary evidence or evidence of bad faith on the part of the agency, summary judgment in favor of defendant is appropriate with respect to plaintiff's five outstanding requests under FOIA Exemption 3. *See id.*

## III. Exemption 1

 As an alternative and independent basis for its decision, the Court holds that summary judgment is also warranted on all five of plaintiff's requests under Exemption 1, FOIA's national security exemption. Exemption 1 protects from disclosure under FOIA matters that are "(A) specifically authorized under criteria established by an Executive order to be kept

---

7. *Terkel* involved a suit against a telephone company arising from its alleged cooperation with the NSA to conduct surveillance under the TSP. The government intervened, and asserted, *inter alia,* the state secrets privilege and Section 6 to protect disclosure of information relating to the TSP. *See Terkel,* 441 F.Supp.2d at 904–08.

8. Because the Court holds that defendant properly withheld all of the requested information under Section 6, it need not reach the parties' arguments regarding 50 U.S.C. § 403–1(i)(1) and 18 U.S.C. § 798. These statutes essentially protect from disclosure information relating to the "sources," "methods," and "procedures" of the NSA's intelligence activities. Plaintiff argues that, at least with respect to requests 2–4 and 16, the information it requests does not fall within these statutory exemptions because it does not relate to NSA sources, methods, or procedures. (*See* Pl. Mot. at 14, 15, 17.) However, the Court is persuaded by defendant's commonsense position that the targets of the TSP are "sources" of intelligence and the TSP is a "method" of intelligence gathering. (Def. Reply at 4 n. 3.) It would therefore appear that information regarding particular potential targets (request 16) and statistics regarding the number of TSP targets and the frequency of TSP surveillance (requests 2–4) are also protected from disclosure by the plain language of 50 U.S.C. § 403–1(i)(1) and 18 U.S.C. § 798.

secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Here, defendant relies on Executive Order 12958, as amended by Executive Order 13292, 68 Fed.Reg. 15315 (Mar. 25, 2003), which sets forth the standards for national security classification and specifies several categories of information which may be considered for classification. Specifically, Executive Order 12958 authorizes classification of materials relating to "intelligence activities (including special activities), intelligence sources or methods, or cryptology"[9] and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection systems relating to national security" when an appropriate classification authority "determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security...." Executive Order 12958 §§ 1.4(c), 1.4(g), 1.1(a)(4). To justify summary judgment under Exemption 1, an agency "must provide 'detailed and specific' information demonstrating both why the material has been kept secret and why such secrecy is allowed by the terms of [the] executive order." *ACLU v. U.S. Dep't of Justice,* 265 F.Supp.2d 20, 27 (D.D.C.2003) (quoting *Campbell v. U.S. Dep't of Justice,* 164 F.3d 20, 30 (D.C.Cir.1998)).

To that end, NSA declarant Joseph B., an original classification authority and "one of the few Agency officials who has been cleared to have access to the details of the TSP and the documents related thereto," states that the documents responsive to requests 2–4 and 6 have been properly classified under Executive Order 12958, as their unauthorized disclosure

"reasonably could be expected to cause exceptionally grave damage to the national security." Executive Order 12958 § 1.2(a)(1). (Joseph B. Decl. ¶¶ 1, 2, 12, 19.) Specifically, he explains, the release of the statistics requested by plaintiff would reveal "information about the U.S. intelligence community's capabilities, priorities, and activities," and such information "about the nature and frequency of the Government's use of specific techniques ... could be exploited by our adversaries in order to conduct their international terrorist activities more securely, to the detriment of the national security." (*Id.* ¶¶ 12–14.) Documents responsive to request 6, he avers, likewise "reveal details about the operation of the TSP, and its strengths and vulnerabilities, which could ... compromis[e] the effectiveness of the program and undermin[e] its goal of detecting and preventing the next terrorist attack on the United States." (*Id.* ¶ 19). Finally, the Joseph B. Declaration states that the fact of the existence or nonexistence of information responsive to request 16 is also properly classified under Executive Order 12958. (*Id.* ¶ 28.) As discussed above, he explains that the NSA cannot confirm or deny in any particular case whether communications were collected because over time, the accumulation of inferences from the NSA's responses to such requests "would disclose the targets and capabilities ... of the TSP and inform our adversaries of the degree to which NSA is aware of some of their operatives or can successfully exploit particular communications." (*Id.* ¶ 27.) This "compilation of information" could reasonably be expected to "cause exceptionally grave and irreparable damage to the national security" if disclosed. (*Id.* ¶ 28.)

---

9. As noted above, all of the information requested by plaintiff at the very least involves NSA's "intelligence activities."

██ In response, plaintiff challenges the sufficiency of the NSA's explanations and the propriety of the classification of the withheld material in light of the "exceptional public interest" in the "general scope of the NSA's domestic surveillance program." (Pl. Mot. at 11–13.) Plaintiff argues that the release of only "bare statistics" and the information relating solely to whether it has been the target of surveillance could not reasonably be expected to result in the damage to the national security that defendant proclaims. (*Id.* at 11, 30.) Plaintiff also cites to section 3.1(b) of Executive Order 12958, which provides that "[i]n some exceptional cases, . . . the need to protect [sensitive] information may be outweighed by the public interest in disclosure of the information, and in these cases the information should be declassified" by the agency, and argues that because the public interest in disclosure here is "exceptional" and the risk to national security low, disclosure should be compelled under FOIA. (*Id.* at 12–13.) Essentially, plaintiff asks the Court to balance the potential harm of the disclosure against the public's interest in the information. Plaintiff, however, misconstrues the statutes and well-established case law. Under Exemption 1 and the plain language of Executive Order 12958, that balancing does not rest with the Court but belongs exclusively to the agency. *See* Executive Order 12958 § 3.1(b) (The *"agency head* or the *senior agency official* . . . will determine, *as an exercise of discretion,* whether the public interest in disclosure outweighs the damage to the national security that might reasonably be expected from disclosure." (emphasis added)). Courts have repeatedly emphasized that "weigh[ing] the variety of subtle and complex factors in determining whether the disclosure of information may lead to an unacceptable risk of compromising the intelligence-gathering process" is appropriately left to the agencies. *Ctr. for Nat'l Sec. Studies,* 331 F.3d at 927 (quoting *Sims,* 471 U.S. at 180, 105 S.Ct. 1881). The Court's role with regard to Exemption 1 is only to review the sufficiency and reasonableness of the agency's explanation for its classification decision, giving the agency's determination the heightened deference it is due under the law. *See Gardels,* 689 F.2d at 1104; *see also ACLU,* 265 F.Supp.2d at 31 ("That the public has a significant and entirely legitimate desire for th[e] information simply does not, in an Exemption 1 case, alter the analysis.").

Plaintiff also cites to section 1.7 of Executive Order 12958, which states that "[i]n no case shall information be classified in order to . . . conceal violations of law," and again argues that because a court has recently held the TSP to be unlawful, information relating to the TSP is improperly classified. (Pl. Reply at 5.) The Court rejects this argument for substantially the same reasons explained above. Even if the TSP were ultimately determined to be illegal, it does not follow that the NSA's decision regarding the classification of materials relating to the TSP was made "in order to . . . conceal violations of law." Because of the deference due to the NSA in matters of national security, and in the absence of any evidence to the contrary, the Court must accept defendant's reasonable explanation that the materials were classified in order to prevent damage to the national security. *See Gardels,* 689 F.2d at 1104.

██ As noted above, courts must afford agency declarations like those filed here "substantial weight" because "the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [sic] might occur as a result of public disclosures of a particular classified record." *Krikorian v. Dep't of State,* 984

F.2d 461, 464 (D.C.Cir.1993) (quoting *Military Audit Project*, 656 F.2d at 738); *Salisbury v. United States*, 690 F.2d 966, 970 (D.C.Cir.1982). If the agency's declarations "are neither contradicted by other record evidence nor contaminated by indications of bad faith, the reviewing court should not ordinarily second-guess the agency's judgment." *ACLU*, 265 F.Supp.2d at 27, 29 (noting that the agency's burden under Exemption 1 is "not especially onerous"). Having reviewed the declarations submitted by the NSA, the Court concludes that they describe "the context and nature of the withheld information," *Campbell*, 164 F.3d at 31, and the "justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." [10] *Military Audit Project*, 656 F.2d at 738 (citations omitted). Because the Court is "satisfied that proper procedures have been followed and that the information logically falls into [Exemption 1], [it] need not go further to test the expertise of the agency, or to question its veracity when nothing appears to raise the issue of good faith." *Gardels*, 689 F.2d at 1104.

In short, plaintiff's arguments in favor of disclosure fall far short of overcoming the NSA's expert judgment that the disputed information must be withheld pursuant to Executive Order 12958 because it is reasonably connected to the protection of national security. *See ACLU*, 265 F.Supp.2d at 30.

## CONCLUSION

For the foregoing reasons, the Court holds that the NSA properly invoked Exemptions 1 and 3 to withhold information responsive to plaintiff's FOIA requests 2–4 and 6 and to refuse to confirm or deny the existence of documents responsive to request 16. Thus, defendant "has fully discharged its obligations under the FOIA." *Greenberg*, 10 F.Supp.2d at 11. Defendant's motion for summary judgment is therefore granted, and plaintiff's motion for partial summary judgment is denied.

## *ORDER*

For the reasons stated in the accompanying Memorandum Opinion, it is hereby **ORDERED** that defendant's motion for summary judgment [# 6] is **GRANTED;** it is **FURTHER ORDERED** that plaintiff's cross-motion for partial summary judgment [# 12] is **DENIED;** and it is

**FURTHER ORDERED** that this case is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

---

10. Indeed, as the parties acknowledge, this Court has previously recognized that an agency may properly invoke Exemption 1 to withhold aggregate statistical data regarding the total number of times particular surveillance tools were used. *ACLU*, 265 F.Supp.2d at 31 (noting that "records that indicate how [an agency] has apportioned its ... resources, that reveal the relative frequency with which particular surveillance tools are deployed, and that show how often U.S. persons have been targeted may undoubtedly prove useful to those who are the actual or potential target of such surveillance, and may thereby undermine the efficiency and effectiveness of such surveillance").